The Vice-Chancellor.
Thedefendants became seised of *474 the two lots in question in 1824, and converted them to the purpose of a cemetery for their religious society. The complainants have relative,s interred there, but no one of them has any deed of a vault or a portion of the ground, or any title thereto. No such deed or conveyance has been executed to any person. The whole title has remained in the corporation.
The sepulture of friends and relatives, in such a burying ground, confers no title or right upon the survivors. If the latter have any interest in the cemetery, or control over its use and disposal, it can only be as corporators in the society owning the ground.
The only protection afforded to the remains of the dead interred in a cemetery of this description, is, by the public laws prohibiting their removal, excepten the prescribed terms; and in a still stronger public opinion. Probably, these furnish all the protection which is consistent with the exigencies of a large city, the population of which increases with marvellous rapidity, and whose wants leave but little room for the remains of the dead, in the dense and crowded haunts and thoroughfares of the living.
Where vaults or burying lots, have been conveyed by religious corporations, rights of property are conferred upon the purchasers. This was the case with the corporation of the Brick Presbyterian Church. (E Edw. Ch. R. 155.) The right is like that to any other real estate, and is as perfect without sepulture, as it is where the grantee has used it for that purpose.
The payment of fees and charges to the corporation or its officers, upon interments, gives no title to the land occupied by the body interred. It confers the privilege of sepulture for such body, in the mode used and permitted by the corporation; and the right to have the same remain undisturbed, so long as the cemetery shall continue to be used as such, and so long also, if its use continue, as such remains shall require for entire decomposition ; and also the right, in case the cemetery shall be sold for secular purposes, to have such remains removed and properly deposited in a new place of sepulture.
This, I am satisfied, is the whole extent of the legal rights and privileges conferred by interment, and the payment of the *475 customary charges, in the burying grounds of our religious corporations.
In common with other corporations of the same class, these defendants were authorized, upon an order obtained from the court of chancery, to sell any of their real estate. The statute providing for the incorporation of such societies, gives them power, among other things, to regulate the perquisites for the breaking of the ground in their cemeteries or church yards, and burying the dead ; and while it conferred the unrestricted authority to sell all their lands, except that it was to be on the order of the court, there was no prohibition or regulation concerning the disposition of the remains of the dead, on a sale of their church-yards or burying grounds. It was thus left for the court of chancery, to exercise all the control and restraint, that could by law be imposed upon the unnecessary or unseemly alienation of cemeteries.
In 1842, the legislature imposed farther restraints. The act in relation to burying grounds, (Laws of 1842, ch. 215, p. 259,) provides that no church, or religious corporation, shall mortgage any burying ground, without the previous consent in writing of three-fourths in number of the congregation or society composing such church or corporation; and to provide for the case of a sale, it requires the like consent, before any dead bodies or human remains shall be removed from any burying ground, which shall within three years have been used for that purpose; with the intent to convert the ground to any other purpose. Both sections apply to cases in which compensation has been made for interments.
It is at least a question, whether, since this act, the court of chancery retains any control over the subject, considered merely in reference to the previous use of land for the purpose of burial • on an application for its sale or mortgage, where the requisite consent has been obtained.
In this instance, the corporation were seised in fee of the lots, and they had parted with no vaults, or other rights inconsistent with their exclusive dominion over them. On an application to this court, showing the necessity of selling the lots to save their church lots from being sold for their debts ; that the size of the *476 lots was totally inadequate for a cemetery; and that three-fourths of their congregation had consented in due form ; an order was made authorizing a sale of these premises. The defendants have made a sale pursuant to the order, have executed a conveyance, and received the price.
I entertain no doubt that their sale was valid, and that they have a perfect legal right to remove the human remains now interred in the two lots, to their new cemetery at Bush wick.
It is painful and deeply abhorrent to the sensibilities of our nature, to have the remains of beloved friends and relatives disturbed in their last homes, and removed by rude and careless hands, to a distant cemetery, not hallowed by any of the associations which encircle the consecrated ground where we have deposited them in sadness and in sorrow. I confess that I have not become so much of a philosopher, as to regard the bodies of deceased friends, as nothing more nor better than the clods of the valley; and that my sympathies were strongly enlisted in behalf of these complainants, vindicating the repose of the bones of their kindred. But I cannot shut my eyes to the clear light of the law as applicable to the case.
The temporary injunction must be dissolved, and the order to show cause discharged, with costs to be taxed.